UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN MCCASLAND,

    Plaintiff,

vs.                                                Case No.:8:17-cv-990-T-27AEP

PRO GUARD COATINGS, INC.,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Defendant's Motion for Summary Judgment (Dkt. 35), Plaintiff's opposition (Dkt. 36), and Defendant's reply (Dkt. 39). Upon consideration, Defendant's Motion for Summary Judgment (Dkt. 35) is **GRANTED**.

In this products liability action, Plaintiff McCasland has no expert evidence establishing that Pro Guard's product caused his medical condition. Specifically, he offers no evidence from which a reasonable jury could find, within a reasonable degree of medical certainty, that Pro Guard's product was capable of causing and did cause his medical condition. Accordingly, Pro Guard is entitled to summary judgment as a matter of law.

### I.    BACKGROUND

In 2010, McCasland began using Pro Guard Coatings, Inc.'s Liquid Roof product to repair recreational vehicle roofs in his occupation as a recreational vehicle restoration specialist. (Dkt. 2, Complaint, ¶¶ 9, 11,12). From 2010 to 2013, he used it for its intended purpose and according to the instructions provided in the "Application Instructions & Information" booklet included with the

1

product when purchased. (Id. at ¶¶ 12, 16, 22). According to McCasland, in addition to these instructions, he complied with the product's warning and only used it in areas of adequate ventilation. (Id. at ¶ 26). In 2012, he began to develop symptoms, first presenting with an arrhythmia. (Id. at ¶ 28). In 2013, his symptoms worsened and he began to experience involuntary movements of his tongue and mouth which prompted him to seek medical treatment. (Id. at ¶ 31). Dr. Emilio Perez prescribed Clonazepam to treat his symptoms. (Id. at ¶ 32). According to McCasland, despite this prescription, his symptoms persisted. (Id. at ¶ 36). From the time his symptoms began until May of 2014, he sought treatment from several doctors, none of whom were able to provide a diagnosis. (Id. at ¶ 42). In May 2014, he treated with Dr. Marion Ridley. (Id. at ¶ 45). After running a variety of tests, Dr. Ridley diagnosed him with oromandibular dystonia. (Id. at ¶ 50).

McCasland alleges that his use of Liquid Roof is the proximate cause of his oromandibular dystonia. Specifically, he alleges that Pro Guard is liable for failing to adequately warn him of the risks of using its product. (Id. at pp. 9-10). Pro Guard moves for summary judgment, contending that McCasland has failed to show a genuine issue of material fact that Liquid Roof caused his injuries, more specifically, that he has no evidence that Liquid Roof caused his medical condition. (Dkt. 35, Motion for Summary Judgment, at p. 1).

## II. STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it

may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). The nonmoving party must "go beyond the pleadings," and designate specific facts showing that there is a genuine dispute. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). A mere scintilla of evidence in the form of conclusory allegations, legal conclusions, or evidence that is merely colorable or not significantly probative of a disputed fact cannot satisfy a party's burden. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991); *Kernel Records*, 694 F.3d at 1301.

For purposes of a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 658 (11th Cir. 2012)."Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin Cty. v. Purcell*, 971 F.2d 1558, 1563-64 (11th Cir. 1992), "inferences based upon speculation are not reasonable." *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine dispute over a material fact, the court should not grant summary judgment. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1998). However, if the nonmovant's response consists of nothing more than a repetition of conclusory

3

allegations, summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010 (1982). And the court need not "parse a summary judgment record to search out facts or evidence not brought to the court's attention." *Atlanta Gas Light Co. v. UGI Utilities, Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006).

## III. DISCUSSION

### *Products Liability: Strict Liability and Negligence Claims Require Causation*[1]

McCasland seeks recovery from Pro Guard under products liability theories of failure to warn of the risks of using its product.[2] Under Florida law, to succeed on his claim, he must show "(1) that the product warning was inadequate; (2) that the inadequacy proximately caused [his] injury; and (3) that []he in fact suffered an injury from using the product." *Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1321 (11th Cir. 2017) (citing *Hoffmann-La Roche Inc. v. Mason*, 27 So. 3d 75, 77 (Fla. 1st DCA 2009)). Relevant to his arguments in opposition to Pro Guard's summary judgment motion, the mere possibility that Liquid Roof caused his medical condition is not enough. *Hessen v. Jaguar Cars, Inc.*, 915 F.2d 641, 647 (11th Cir. 1990). Rather, Florida courts follow the "more likely than not" standard for causation in products liability actions. *Id.* He must therefore prove causation by "evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a ***substantial factor*** in bringing about the result." *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1256 (11th Cir. 2010) (quoting *Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018 (Fla. 1984)) (emphasis added).

---

[1] Because jurisdiction is based on diversity of citizenship, Florida's substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[2] Under the theory of strict products liability, a product may be defective by virtue of an inadequate warning. *See Ferayorni v. Hyundai Motor Co.*, 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998).

4

The issue raised by Pro Guard in its motion is whether McCasland's evidence raises a material issue of fact that, more likely than not, Liquid Roof caused his medical condition. More specifically, Pro Guard contends that McCasland is unable to carry his burden of demonstrating the essential element of causation because he has no expert testimony linking Liquid Roof to his medical condition. *See Eghnayem*, 873 F.3d at 1321 (citation omitted).

In support of its motion, Pro Guard relies on the affidavit of its expert, Juliet Gridley, who opines that "[t[here is no evidence to support the allegation that Plaintiff suffered a toxic exposure" to Liquid Roof. (Dkt. 35-16, Ex. P, pp. 1-2). In addition to Gridley's affidavit, Pro Guard relies on the independent medical examination report of Dr. Robert Martinez, who opines, after examining McCasland, that he "has not suffered any neurological illness related to any kind of toxic exposure or exposure to any chemicals or poisons including Pro-Guard Coating since his neurological exam was normal" and "[n]eurologically, I found no abnormalities related to Pro-Guard Coating." (Dkt. 35-18, Ex. R, p. 6). Pro Guard is therefore entitled to judgment as a matter of law if McCasland is unable to establish a genuine issue of material fact as to whether his exposure to Liquid Roof caused his oromandibular dystonia.

"[T]o establish medical causation in a toxic tort case such as this one, a plaintiff must show both that exposure to the alleged toxic substance can cause a particular disease (general causation), and that exposure to the alleged toxic substance was a cause of his or her individual injury (specific causation)." *See Guinn v. AstraZeneca Pharm. LP*, 598 F. Supp. 2d 1239, 1242 (M.D. Fla. 2009) *aff'd* 602 F.3d 1245 (11th Cir. 2010). Accordingly, for McCasland's claims to survive summary judgment, he must show that Liquid Roof can *generally* cause oromandibular dystonia and that Liquid Roof was the *specific* cause of his medical condition. *See Kilpatrick v. Breg, Inc.*, 613 F.3d

1329, 1334 n.4 (11th Cir. 2010). And he must present expert testimony linking Liquid Roof to his medical condition to meet this burden. *See id.*; *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005); *See also Small v. Amgen, Inc.*, 723 F. App'x 722, 726 (11th Cir. 2018) ("Regarding discovery and proof of causation, in complex cases where a jury is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge, an expert's testimony is required.").

In an effort to avoid summary judgment, McCasland relies on the testimony of his only expert, Dr. Justin White. However, Dr. White's testimony fails to create a genuine issue of material fact as to causation. Dr. White acknowledges that he is a biochemist, not a medical doctor, and cannot offer medical opinions on causation. Specifically, Dr. White cannot link Liquid Roof to McCasland's injuries:

> Q. It would be outside of your training to diagnose?
> A. Yes. That is true.
> Q. So you are not rendering any diagnosis in this case and will not be rendering any diagnosis in this case?
> A. No.
> Q. Furthermore, it would be outside of your training to establish causation --
> A. Yes.
> Q. -- or etiology for any condition?
> A. Yes
> Q. So you are not rendering the opinion in this case and will not be rendering the opinion in this case that any substance caused any diagnosis in Mr. McCasland; is that correct?
> A. Yes
>
> . . .

> Q. Okay. So you cannot and will not be able to link this product to any injury to Mr. McCasland?
>
> A. No.

(Dkt. 35-5, Justin White Dep., at 48:1-2;13-25 – 49:1-4; 50:1-3).[3]

In addition to Dr. White, McCasland relies on the testimony of his treating physician, Dr. Marion Ridley.[4] Although Dr. Ridley confirmed McCasland's diagnosis of oromandibular dystonia, he repeatedly acknowledged that he has no opinion that any product caused McCasland's dystonia. (Dkt. 36-2, Marion Ridley Dep., 10:19-25 – 11:1-4). Indeed, Dr. Ridley's testimony succinctly highlights the deficiency in Plaintiff's argument on causation: "[w]e do not know what causes dystonia." (Id. at 12:1-5). Accordingly, the testimony of Dr. White and Dr. Ridley fails to demonstrate causation or a material issue of fact as to causation. *See Guinn*, 602 F.3d 1245; *Gooding*, 445 So. 2d 1015.[5]

Finally, McCasland's conclusory allegation that Liquid Roof proximately caused his oromandibular dystonia is belied by the record evidence. In his Response to Defendant's Request

---

[3] In addition to Dr. White's deposition, McCasland attached Dr. White's written expert opinion, as Exhibit A, to his Response in Opposition to Summary Judgment. (Dkt. 36-1). This report likewise fails to show any link between Liquid Roof and his medical condition. Dr. White analyzes various chemicals in Liquid Roof and concludes "I believe the complete mixture to (sic) particular hazardous." (Id. at p. 2). Notwithstanding, his opinion that the product contains hazardous materials is not sufficient to show it was the specific cause of McCasland's injuries. *See Guinn*, 602 F.3d at 1248 n.1 ("Specific causation refers to the issue of whether the plaintiff has demonstrated that the substance actually caused injury in [his] particular case.").

[4] Dr. Ridley was not disclosed as one of Plaintiff's experts. *See United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) ("A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party.") (citation omitted).

[5] Moreover, one of McCasland's treating physicians, Dr. Emilio Perez, acknowledged during his deposition to not knowing the cause of McCasland's condition nor seeing any proof of his complaints. (Dkt. 35-10, Emilio Perez Dep., at 13:1-2; 24:24-25:1-13).When asked about two June 2013visits, Dr. Perez testified that McCasland reported symptoms of abnormal jaw movements, yet appeared normal during his physical examinations. (Id. at 9:23-10:1-1). Additionally, when asked about the cause of the tongue movements, Dr. Perez testified, "I don't know what is causing his tongue movements." (Id. at 25:1-13).

for Admission (Dkt. 35-11, pp. 3-4), he admits that no healthcare provider has connected his diagnosis to Pro Guard's product. (Id.). And, in his Responses to Defendant's First Set of Interrogatories (Dkt. 35-12, at ¶ 7), he responds that Liquid Roof caused his injuries because, "[h]aving ruled out all other possibilities, logic dictates that the only remaining explanation for the Plaintiff's injuries is exposure to the Defendant's product, known as 'Liquid Roof.'" (Id.). This response amounts to nothing more than lay speculation on causation, insufficient as a matter of law to avoid summary judgment.

## IV. CONCLUSION

Considering Pro Guard's evidence supporting its motion, to avoid summary judgment, McCasland's burden is to show, through expert testimony, a material issue of fact as to whether Liquid Roof caused his medical condition. *See id.*; *Kilpatrick*, 613 F.3d at 1334 n.4; *McClain*, 401 F.3d at 1237. He cannot make that showing, since there is no record evidence that Liquid Roof was a *substantial factor* in causing his medical condition. *See Guinn*, 602 F.3d 1245; *Gooding*, 445 So. 2d 1015. Without proof of causation, he cannot make a *prima facie* case on his claims. *See Rink*, 400 F.3d at 1297.

Where, as here, the expert testimony fails to support causation, summary judgment is due to be granted. *See Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1316 (11th Cir. 2014) (affirming district court's decision to grant summary judgment because plaintiff failed to have admissible "general and specific-causation-expert testimony"); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1297 (11th Cir. 2005) (finding summary judgment appropriate where "sufficient evidence of causation was lacking without expert testimony").

Accordingly, Pro Guard is entitled to judgment as a matter of law. *See Celotex*, 477 U.S.

8

at 322-23.[6] Defendant's Motion for Summary Judgment (Dkt. 35) is **GRANTED**. The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Defendant and **CLOSE** the file. The Pretrial Conference is cancelled.

**DONE AND ORDERED** this 5th day of November, 2018.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[6] In *Celotex*, 477 U.S. at 322-23, the Supreme Court noted:
"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."